**IT IS ORDERED as set forth below:**

**Date: December 10, 2021**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| MARVIN GAYE GORDON, | CASE NO. 17-66911-BEM |
| Debtor. | CHAPTER 7 |
| MARVIN GAYE GORDON, | |
| Movant, | |
| v. | Contested Matter |
| BH MANAGEMENT SERVICES, LLC, | |
| Respondent. | |

**O R D E R**

Debtor's *Amended Motion for Contempt and Violation of Bankruptcy Discharge Injunction* (the "Motion") [Doc. 40] came before the Court for an evidentiary hearing on September 30, 2021 (the "Hearing"). In the Motion, Debtor requests costs and damages for violations of the discharge injunction. Shelba D. Sellers appeared on behalf of Debtor Marvin Gaye

Gordon and R. David Ware appeared on behalf of Respondent BH Management Services, LLC. The Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(O). This Order constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

After consideration of the testimony, the exhibits, and the applicable law, the Court concludes that Debtor has shown that Respondent violated the discharge injunction and that sanctions should be imposed. Therefore, the Motion will be granted and the Court will require Respondent to pay Debtor's attorney fees for bringing this Motion.

**I. Findings of Fact**

During the Hearing, the Court heard testimony from Debtor and from Michelle Mabe, a regional manager for Respondent. The Court admitted Debtor's exhibits[1] 1, 3-5, and 7-8 [Doc. 62] and Respondent's exhibits[2] 1-9 [Doc. 59]. The Court also admitted Debtor's exhibit 6 but limited it to those emails initiated by Debtor. [Doc. 62]. Respondent proffered exhibits 10-15 as impeachment evidence [Doc. 64], to which Debtor's counsel objected on the basis of hearsay. Respondent asserted the exhibits are its business records. The Court allowed Debtor's counsel to reserve the objection and to file a brief in support of the objection. [Doc. 65]. No briefs or other papers were filed within the time to do so and, therefore, the Court deems the objection to be abandoned, and Respondent's exhibits 10-15 are admitted.

Debtor executed an Apartment Lease Contract with Respondent on May 23, 2016, with a lease term from June 5, 2016 to August 29, 2017 and monthly rent of $1,109 for an apartment in the Rockledge apartment complex at 2093 Powers Ferry Road, Marietta, Georgia (the "Lease"). [R. Ex. 15 ¶¶ 3, 6]. The Lease provides that it will "automatically renew month-to-month

---

[1] Hereinafter, D. Ex. ___.
[2] Hereinafter, R. Ex. ___.

2

unless either party gives at least 60 days written notice of termination or intent to move-out[.]" [Id. ¶ 3]. The Lease further provides that "Oral move-out notice will not be accepted and will not terminate your Lease Contract." [Id. ¶ 37].

Debtor did not move out at the end of the lease term. Instead, Debtor made a payment of $1,236.60 to Respondent on September 2, 2017. [P. Ex. 1, 3; R. Ex. 7]. Debtor testified that he was current on his rent when he made the September payment. The Resident Ledger kept by Respondent for Debtor's account (the "Ledger") shows that the September 2 payment reduced Debtor's balance owed to Respondent to $0, and that Respondent did not assess any further charges in September 2017. [P. Ex. 3; R. Ex. 7].

Debtor filed a Chapter 7 petition pro se on September 29, 2017. [Doc. 1 at 2]. Debtor testified that also on September 29, 2017, he moved out of the apartment and rented a Penske truck to do so. Debtor's apartment was on the third floor. He paid $100 for assistance moving, and the movers were only able to move four large pieces. They did not move Debtor's couch, which was left behind because Debtor did not have the money to pay to have it moved. Debtor also left some trash and other items in the apartment, but he otherwise left the apartment in good condition. Debtor turned in his keys to "Gary," a leasing specialist at Rockledge, who Debtor was personally acquainted with. Gary knew Debtor was leaving the apartment and saw Debtor with the moving truck. Debtor also notified his utility providers by phone that he was moving and told Gary he had done so. Debtor testified that he thought he was at the end of the lease. Debtor did not provide written notice of his intent to move out, but said that the notice of bankruptcy filing would have provided that notice. Ms. Mabe testified that because Debtor did not give notice, did not specifically return keys to the office, did not do a walkthrough, and did not

3

provide any email or documentation that he had moved out and returned possession to Respondent, Respondent could not move him out because there were still items in the apartment.

Debtor's Chapter 7 petition showed that he lived at the Rockledge apartment address. [Doc. 1 at 2]. Debtor filed a list of creditors on October 6, 2017 that included Respondent. [Doc. 12 at 3]. Debtor filed a change of address form on October 6, 2017 showing a new address in Tampa, Florida and an effective date of October 3, 2017. [Doc. 14]. Debtor filed schedules on October 12, 2017, and listed Respondent on Schedule G: Executory Contracts and Unexpired Leases. [Doc. 17]. On October 16, 2017, Debtor filed a Statement of Intention in which he indicated his intent to surrender the Rockledge apartment. [Doc. 19]. Debtor received a discharge on January 11, 2018. [Doc. 30]. A copy of the discharge order was mailed to Respondent by the Bankruptcy Noticing Center on January 13, 2018. [Doc. 32].

On January 29, 2018, Respondent prepared an affidavit for a dispossessory proceeding that was filed on February 8, 2018 against Debtor in the Magistrate Court of Cobb County, Georgia. [P. Ex. 4; R. Ex. 2, 8]. The dispossessory complaint requested possession of the apartment, past due rent of $4,436, late fees of $600, utility charges of $471.66, and court costs of $56.50. [Id.]. Ms. Mabe testified that the amounts were the accumulation of rent for October, November, December, as well as water, late fees, and any pest control and trash fees. On the affidavit of service at the bottom of the complaint, the box is checked for "Defendant not found in the jurisdiction of this Court" with the handwritten notation, "NO SERVICE SKIPPED." [P. Ex. 4; R. Ex. 2, 8]. The docket in the dispossessory proceeding shows entries for non-service and payment of court fees on February 9, 2018. [R. Ex. 8]. There are no further entries on the docket until December 2, 2020, which reflects a phone call the Magistrate Court received from Debtor. [Id.].

4

The Ledger shows that after Debtor's September 2, 2017 payment, Respondent assessed no further charges that month, and Debtor's account balance was $0 on the bankruptcy petition date. [D. Ex. 3, R. Ex. 7]. On October 1, 2017, Respondent assessed rent and various other charges. On October 9, 2017, Respondent issued credits for 22 days for the October 2017 rent, trash, and pest control, and assessed a fee of $210 for "damg Couch left ($50, trash left – 5 bags ($50), two holes in bdrm wall ($110)." [Id.]. From November 1, 2017 through February 1, 2018, Respondent continued to assess rent and fees for those months. [Id.].

On October 1, 2017, Respondent assessed charges of $24.93 for "Metered Sewer (8/1/2017 – 8/31/2017)" and $20.84 for "Metered Water (8/1/2017 – 8/31/2017)". [Id.]. On November 1, 2017, Respondent assessed charges of $24.03 for "Metered Sewer (9/1/2017 – 9/30/2017)" and $20.08 for "Metered Water (9/1/2017 – 9/30/2017)." [Id.].

The dispossessory affidavit was prepared on January 29, 2018. On February 1, 2018, the Ledger shows that Respondent issued credits for rent and for trash and pest control fees that had been charged for the months of November 2017 through February 2018. [Id.]. The dispossessory affidavit was filed on February 8, 2018. Debtor's Resident Ledger shows that on February 13, 2018, Respondent wrote off all remaining charges on Debtor's account, including late fees, utility fees, water and sewer costs, trash fees, pest control fees, eviction fees, and the fee for removing items left in the apartment by Debtor. [Id.].

The Court is unable to reconcile the amounts requested in the dispossessory proceeding with the amounts in the Ledger. The dispossessory proceeding requested past due rent in the amount of $4,436, which is equivalent to four month's rent charged at $1,109 per month. However, the Ledger shows $1,109 in rent charged for October and November 2017, but $1,253 in rent charged for December 2017, January 2018, and February 2018. Additionally, on October

5

9, 2017, a rent credit was issued in the amount of $737.03 for 22 days rent, which is not reflected in the amount requested in the dispossessory action.[3] Also on October 1, 2017 a credit of $100 was issued for "Renewal Incentive," and on November 6, 2017, a charge of $120 was assessed for "Renewal Prorate rent." Therefore, excluding the two renewal entries, the Ledger reflected rent due in the amount of $3,936.97 as of the date the dispossessory affidavit was prepared. If the two renewal entries are included, the amount increases to $3,956.97. Based on the Court's calculations, the amounts requested for utilities and late fees are also overstated. Based on Ledger entries for utility billing fees, sewer, water, trash, pest control and valet trash, including credits issued on October 9, 2017, the Court calculates utilities of $293.08 due as of the date of the dispossessory affidavit as opposed to the $471.66 requested. For late charges, including what appears to be a credit issued on October 16, 2017, the Court calculates late charges of $450 due as of the date of the dispossessory affidavit as opposed to the $600 requested.

    Debtor testified he first learned of the dispossessory proceeding in December 2020. After being on a waiting list for three years, Debtor obtained a voucher for subsidized housing in November 2020 and applied for an apartment with the voucher. He was informed that he was turned down for the apartment because his tenant screening disclosed an eviction. Debtor testified that he contacted Respondent for more information and was referred to the Magistrate Court. The docket in the dispossessory action includes an entry on December 2, 2020 (the first docket entry since February 9, 2018) that states: "Def called for information on case. I provided him with attorney information and emailed him a copy of the affidavit and non-service – SS." [R. Ex. 8]. Rockledge sent Debtor an email dated December 2, 2020 stating that the dispossessory proceeding

---

[3] The Ledger shows a "Move Out" date of "10/9/17." This is consistent with the partial credit issued for October 2017 rent on October 9. 2017. What is unclear is why, having issued the credit for October which appears to recognize that Debtor had vacated the apartment, Respondent went on to assess rent for November 2017 through February 2018.

6

"is unrelated to anything financial but we filed to regain possession of the apartment. … I show you have a $0 balance with Rockledge." [D. Ex. 7; R. Ex. 1]. In a letter to Debtor dated December 3, 2020, the property manager for Rockledge stated that "a dispossessory was filed for possession in February 2018 due to items left in the apartment." [D. Ex. 8]. An undated letter from Joseph Fortney, a representative of Respondent, stated: "To Whom it May Concern: Please be advised the [sic] Marvin Gordon was not evicted from Rockledge apartments. There was a filing that was in the process of being removed, and there is not anything outstanding with Rockledge or any BH Management Services property." [R. Ex. 12].

Debtor testified that he was confused by the communications from Respondent stating that the dispossessory was only filed for possession because the dispossessory complaint requested amounts for back rent, utilities, and late fees. Debtor testified that he was turned down for three other apartments because of the dispossessory action and he had to extend the voucher because the dispossessory proceeding was still showing on his tenant screening up to August 2021. Debtor also testified that he did not believe leaving a couch and trash in the apartment would result in a dispossessory proceeding.

After being turned down for subsidized housing, Debtor obtained a copy of his credit report from TransUnion. The report, which is dated January 13, 2021, shows the following information for the dispossessory action:

    Address: 2093 Powers Ferry Rd #E    Filing Date: 2/9/2018
    Marietta GA 300367    Action Type: Forcible Entry/Detainer
    County: Cobb County Magistrate Court    Filing Type: Forceible [sic] Detainer
    Record ID: MY 84888872    Plaintiff: Bh Mgmt
    File Number: 18E02055    Amount: $0.00
    Release Date: N/A

[D. Ex. 5]. The report also showed that two inquiries had been made in the past two years in which the eviction was disclosed. [Id.]. The inquiries were made by Rentgrow on November 30, 2020

7

and on January 7, 2021. [Id.]. The report also stated that it "included the following public record data sources: Cobb County Magistrate Court, Cobb County, Georgia." [Id.].

A report from TransUnion dated January 25, 2021, states that Debtor disputed the January 13, 2021 report, that TransUnion conducted an investigation, and that the entry for the dispossessory action was updated as follows:

> Address: 2093 Powers Ferry Rd #E  
> Marietta GA 300367  
> County: Cobb County Magistrate Court  
> Record ID: MY 84888872  
> File Number: 18E02055  
> Release Date: 12/10/2020  
>
> Filing Date: 2/9/2018  
> Action Type: Civil New Filing  
> Filing Type: Judgment Release  
> Plaintiff: Bh Management Dba Rockledge Apts  
> Amount: $0.00

[R. Ex. 10, 11]. The entry for Release Date was updated from "N/A" to "12/10/2020." The docket for the dispossessory action shows three entries on December 10, 2020: "Electronic Answer"; "Notice – Bankruptcy"; and "Amendment/Answer." [R. Ex. 8].

The docket in the dispossessory proceeding includes an entry on January 27, 2021 reporting a telephone call and stating:

> I spoke with the defendant. He stated that an eviction was coming up on his credit report *with a judgment* and gave me his case number. I told defendant that we were not showing a judgment on this case so he may want to dispute it with the entity that the report came from and that they were welcome to consult with the court. He said he did and they wouldn't do anything. … He said he wanted a court date. I asked him what he would like a court date for. He stated he just wanted to talk to a judge to let them know that this eviction shouldn't have been filed. … He stated he wanted to show his bankruptcy and that this case was fraudulently filed. I explained he could request a hearing, but at this time we are not scheduling court dates so to please be aware that a court date would be on hold for an unknown period of time.

[R. Ex. 8 (emphasis added)]. Nothing in the two January 2021 TransUnion reports reflects a judgment against Debtor. The docket in the dispossessory proceeding shows that the proceeding

8

was dismissed on February 2, 2021 and that Debtor called to obtain a copy of the dismissal on February 3, 2021. [Id.].

Debtor filed a complaint against Respondent in the Superior Court of Cobb County, Georgia, on February 8, 2021. [R. Ex. 4]. The complaint alleged that the dispossessory action was fraudulent because Debtor was not in possession of the apartment at the time the action was filed, that Debtor has an eviction on his credit history due to the dispossessory action, and that the filing of the dispossessory action violated 11 U.S.C. §§ 362 and 524. [Id.]. A second Cobb County Superior Court complaint by Debtor against Respondent alleged slander, alleged that the dispossessory action was filed in an attempt to collect an invalid and discharged debt, alleged that the dispossessory action was filed to punish Debtor, alleged that Debtor had been denied housing due to the negative impact on his credit report, and requested damages in the amount of $60,000. [R. Ex. 6]. The complaint is not stamped as filed, but the certificate of service is dated December 16, 2020 and is stamped "Received" on January 4, 2021. [Id.].

Debtor filed his Motion in this Court on May 11, 2021, and amended the Motion on June 2, 2021. The Court held a preliminary hearing on the Motion on July 27, 2021, during which the parties agreed that the dispossessory proceeding should be expunged from all credit reporting agencies. After the hearing, the Court entered a consent order requiring such expungement. [Doc. 52].

Debtor testified that he has suffered stress, anxiety, loss of appetite, weight loss, and sleeplessness since learning of the dispossessory proceeding and attempting to remove it from his credit report. He testified further that he had been taking Zoloft for some period of time, but that he was prescribed a drug for anxiety and began seeing a therapist in June 2021 as a result of attempting to deal with the dispossessory proceeding. Debtor testified that has spent approximately

9

300-400 hours trying to get the dispossessory action removed from his credit history, including contacting the Magistrate Court, filing a complaint in Superior Court, filing the Motion in this Court, and conducting research related to his court filings. Debtor testified that when he lived in Atlanta he worked two jobs, one at which he earned $18.75 per hour and one at which he earned $12.75 per hour. The filing fee in Superior Court was $214; Debtor did not pay a fee to file his Motion or to reopen his case in this Court.[4] Debtor testified that he owes his attorney in this case $4,000 of $5,000. Debtor testified that he paid application fees for the subsidized apartments for which he was rejected in the total amount of $223. Debtor testified that if he had been able to obtain the subsidized apartment in December 2020, he would have saved 40% off his current rent of $900 per month. Debtor requests a total of $60,000 in damages.

**II. Conclusions of Law**

A Chapter 7 discharge "discharges the debtor from all debts that arose before the date of the order for relief[.]" 11 U.S.C. § 727(b). The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor[.]" *Id.* § 524(a)(2). This section makes clear that personal liability is discharged when an individual receives a Chapter 7 discharge. However, the discharge injunction only applies to debts incurred prepetition.

The Bankruptcy Code defines a debt as "liability on a claim." *Id.* § 101(12). A claim is defined as a "right to payment, whether or not such right is … liquidated, unliquidated, fixed, contingent, matured, [or] *unmatured* …[.]" *Id.* § 101(5)(A) (emphasis added). Therefore, a "debtor's obligations for rent under a lease arises when the lease is signed, and all of the obligations, whether or not matured, constitute a debt within the meaning of 11 U.S.C. § 101(12)."

---

[4] Although the Court charges a fee to reopen a closed bankruptcy case, Debtor never filed a motion to reopen and the reopen fee has not been charged.

10

*Meadows v. Hagler (In re Meadows)*, 428 B.R. 894, 902 (Bankr. N.D. Ga. 2010) (Bonapfel, J.); *see also Midwest Holding #7, LLC v. Anderson (In re Tanner Family, LLC)*, 556 F.3d 1194, 1197 (11th Cir. 2009). Because a claim for unmatured rent is a prepetition claim, it is subject to the discharge injunction.

The Bankruptcy Code provides that in a Chapter 7 case, if the trustee does not assume or reject an unexpired lease for residential property within 60 days of the order for relief, then the lease is deemed rejected. 11 U.S.C. § 365(d)(1). The rejection of a lease constitutes a breach immediately before the filing of the bankruptcy petition. *Id.* §§ 365(g)(1), 502(g)(1). Therefore, any claims arising from such breach are prepetition debts subject to the discharge injunction.

The test for violation of the discharge injunction is "'whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt.'" *Roth v. Nationstar Mortg., LLC (In re Roth)*, 935 F.3d 1270, 1276 (11th Cir. 2019) (quoting *Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1322, 11th Cir. 2015)). A creditor who violates the discharge injunction may be held in civil contempt under 11 U.S.C. § 105(a)[5] "if there is *no fair ground of doubt* as to whether the [discharge] order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019) (emphasis in original); *Roth*, 935 F.3d at 1275; *compare McLean*, 794 F.3d at 1323 (requiring that the creditor "was aware of the discharge injunction and intended the action that violated it[.]" in order to impose sanctions). The debtor has the burden of establishing a violation of the discharge

---

[5] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

11

injunction by clear and convincing evidence. *Daniels v. Howe Law Firm, P.C. (In re Daniels)*, 591 B.R. 814, 822 (Bankr. N.D. Ga. 2018) (Ritchey Craig, J.) (citations omitted).

In this case, Debtor alleges that Respondent violated the discharge injunction by filing a dispossessory proceeding that affected his credit report and his ability to obtain subsidized housing. To establish a violation of the discharge injunction, Debtor must show by clear and convincing evidence that the dispossessory proceeding was an attempt to collect a discharged debt—that is, a debt that arose prior to the petition date of September 29, 2017.

Debtor's initial lease term ended on August 29, 2017. Absent 60 days written notice of intent to terminate the Lease or move out, the Lease automatically renewed on a month-to-month basis until such notice was given by either party. Debtor did not give 60 days written notice at the end of the initial lease term, but instead paid September 2017 rent. Debtor both filed for bankruptcy and moved out of the apartment on September 29, 2017. Debtor was fully current on his obligations under the Lease on the petition date. Debtor did not give written notice of termination of the Lease at the time he moved out. The only written notice of Debtor's intent to terminate the Lease is Debtor's statement of intention, filed on October 16, 2017, which indicated his intent to surrender the property. Therefore, on the petition date, the Lease was an unexpired lease subject to the provisions of § 365. The Chapter 7 Trustee did not assume or reject the Lease within 60 days of the order for relief such that the Lease was deemed rejected on November 29, 2017, which constituted a prepetition breach.

The question raised by these facts is the effect of the month-to-month provision in the Lease, and whether it in effect created a new contract and new debt every 30 days or whether it continued the existing lease. Georgia landlord-tenant law distinguishes between a lease renewal and a lease extension.

12

> Where a lease stipulates for a renewal, the lessee must take whatever action is required of him by the lease in order to put the renewal into effect; but where the lease provides, not for a new contract, but for a mere right to extend the original contract, a continuance in possession after expiration of the term may operate as an extension.

2 Ga. Real Estate Law & Procedure § 11:32 (7th ed.). Here, the Lease provides that "This Lease Contract will automatically *renew* month-to-month unless either party gives at least 60 days written notice of termination or intent to move-out[.]" [R. Ex. 15 (emphasis added)]. The Georgia Court of Appeals has said that "use of the word renewal usually contemplates not automatic extension but the execution of a new lease …, with the execution of which the tenant does become one at will upon the end of the original term." *Linch v. McNeil Real Estate Fund VI, Ltd*., 146 Ga. App. 505, 507, 256 S.E.2d 718, 720 (1978). However, when construing a lease, the Court must ascertain the intent of the parties, and the mere use of the word "renew" is not determinative of whether the parties contemplated executing a new lease or extending an existing lease. *Id.*

The Lease includes other references to renewal. Paragraph 11, governing early move-out, provides that the tenant will be liable for a reletting charge if he "move[s] out without paying rent in full for the entire Lease Contract term or renewal period[.]" [R. Ex. 15]. Paragraph 15 provides that no rent increases are allowed "before the Initial Lease Contract term ends" but if the landlord gives advance notice of rent increases "when the Lease Contract term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent …. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice[.]" Paragraph 37 provides with regard to move-out notice that such notice "will not release you from liability for the full term of the Lease Contract or renewal term." Paragraph 38 provides, "You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid

13

in full." None of these provisions contemplates Debtor signing a new lease, but rather indicates the existing lease will continue with an extended term. Such an interpretation is consistent with the actions of both parties, that is Debtor paying for September 2017 rent, and Respondent accepting that rent and continuing to accrue rent for the following months.

Based on the foregoing, any amounts due for post-petition rent were part of an unmatured or contingent prepetition claim that was discharged. Similarly, any damages for breach based on the rejection of the Lease constitute a prepetition claim that was likewise discharged. Therefore, to the extent Respondent sought to collect rent that matured postpetition or damages for breach of contract in the dispossessory proceeding, it was seeking to collect a discharged debt.

To determine whether the creditor's conduct violated the discharge injunction, the debtor must show that "the *objective effect* of the creditor's action is to pressure a debtor to repay a discharged debt." *Roth*, 935 F.3d at 1276 (quotation marks and citation omitted) (emphasis added). Under this objective test, the Court must consider "the results of a creditor's activity, rather than the creditor's intent or state of mind." *In re Montano*, 488 B.R. 695, 710 (Bankr. D.N.M. 2013). Even "conduct that facially appears permissible may still violate § 524(a)(2) if its objective effect is prohibited, i.e., if it really serves to pressure the debtor to pay a discharged debt." *In re Paul*, 534 F.3d 1303, 1313 (10th Cir. 2008). Respondent contends that by filing the dispossessory proceeding it was only seeking to recover possession of the apartment and not to collect a debt.

In *In re Abril*, No. 8:20-bk-08218, 2021 WL 3162637 (Bankr. M.D. Fla. June 24, 2021), the court found that service of a complaint for possession and for back rent, met the objective test. *Id.* at *5. In *Abril*, the property was leased by the debtor's dental practice, and the debtor signed the lease in his individual capacity. Both the debtor and his practice filed for bankruptcy and both scheduled the landlord as a creditor. The landlord obtained stay relief in the

14

practice's bankruptcy case but not in the debtor's bankruptcy case. The dispossessory complaint was filed against the debtor and the practice prior to the debtor's discharge, but it was served on the debtor after he received a discharge. After the complaint was served, the landlord's attorney assured the debtor's attorney that the landlord was only seeking possession. *Id.* at *1-2. The court said, "Notwithstanding what Creditor's Counsel may have stated—after the fact—Creditor served a complaint against Debtor that contained a damages count for past due pre-petition rent. The Court cannot conceive of a purpose for service of a complaint for damages other than to encourage or require the Debtor to pay a discharged debt." *Id.* at *5.

As in *Abril*, Respondent filed a complaint that sought both possession and damages and subsequently told Debtor that it was only seeking possession. As in *Abril*, the content of Respondent's dispossessory complaint cannot be overcome by these later assurances. Unlike *Abril*, the dispossessory complaint was never served on Debtor (although service was attempted) and, by his own testimony, Debtor was not aware of it prior to December 2020. The docket in the Magistrate Court reflects that after the non-service was entered, Movant took no action to perfect service or to prosecute the dispossessory proceeding other than paying the court fee. And the Ledger shows that Respondent wrote off all the debt it had assessed to Debtor's account, including the debt for August and September 2017 water and sewer, within a week after filing the complaint. Notwithstanding these actions, Respondent did not dismiss the dispossessory proceeding until February 2, 2021, after multiple communications with Debtor about it.

It is undisputed that the dispossessory action appeared on Debtor's credit report, and that Debtor believed it prevented him from obtaining subsidized housing.[6] There is no evidence of how the dispossessory proceeding came to appear on Debtor's credit report. There is

---

[6] Debtor does not argue that the dispossessory proceeding prevented him from obtaining any housing. He testified that he currently is living in an unsubsidized apartment.

15

no evidence that Respondent reported the dispossessory action to any credit reporting agency or otherwise used the unserved dispossessory proceeding as leverage to collect a discharged debt. *Compare In re Deemer*, 602 B.R. 770, 775 (Bankr. M.D. Ala. 2019) (when title is required to dispose of an inoperable vehicle, the creditor violates the discharge injunction by refusing either to repossess a surrendered vehicle or to release the lien without payment of the debt). And, there is no evidence that Respondent had the ability to effect the removal of the dispossessory proceeding from Debtor's credit report.

Nevertheless, this Court, like the Court in *Abril*, cannot conceive of any reason to file a dispossessory proceeding that includes a request for back rent and to leave that dispossessory pending for three years other than to collect a debt. Even though Debtor was unaware of the dispossessory proceeding, the Court must consider whether the objective effect is to pressure a debtor to pay a discharged debt rather than the subjective effect on this Debtor. In fact, Debtor testified that he was confused because of the discrepancy between his communications with Respondent, in which he was told the action had only been filed to obtain possession[7] and that he owed no money, and the complaint itself, which requested damages. Based on the foregoing, the Court finds that Respondent violated the discharge injunction.

Next the Court must consider whether sanctions are appropriate. In other words, is there an objectively reasonable basis for concluding that Respondent's conduct might be lawful? The Court concludes there is not. Debtor scheduled Respondent as a party to an executory contract or unexpired lease. A copy of the discharge order was mailed to Respondent on January 13, 2018. More than two weeks after the discharge, on January 29, 2018, Respondent prepared the

---

[7] Respondent argued that under O.C.G.A. § 44-7-50, it could only obtain possession of the apartment by filing the dispossessory action. However, it is unclear why filing the action without serving or prosecuting it is sufficient to regain possession of the apartment. O.C.G.A. § 44-7-51, -53.

16

dispossessory affidavit that included a request for back rent, utilities, and late fees. Respondent began issuing credits for rent and other fees on February 1, 2018. Respondent filed the dispossessory complaint on February 8, 2018. The non-service was docketed on February 9, 2018. On February 13, 2018, Respondent wrote off all remaining charges, but did not dismiss the dispossessory complaint. Even if there were some reasonable basis for Respondent to believe the Lease had terminated prepetition or that the rent and fees for October 2017 through February 2018 was a postpetition debt, the dispossessory proceeding included utility charges that were incurred prepetition, that is the water and sewer charges for August and September 2017, which were assessed in October and November 2017.

Furthermore, although there is no evidence that Respondent reported negative credit information to any credit reporting agency, the dispossessory did appear on Debtor's credit report as recently as January 2021. It is reasonable to believe that credit reporting agencies access and report publicly available information, such as court filings, and that filing a dispossessory proceeding in violation of the discharge injunction and failing to dismiss it for three years would have a negative effect on Debtor's credit report. Accordingly, the Court finds it appropriate to assess sanctions against Respondent.

The evidence shows that when Debtor began communicating with Respondent about the dispossessory proceeding in late 2020 and early 2021, Respondent made some effort to provide Debtor with documentation to show he had not been evicted and he did not owe any money to Respondent. Nevertheless, Debtor was unable to remove the dispossessory proceeding from his credit report until he obtained a court order. Therefore, the Court will require Respondent to pay Debtor's attorney fees for filing and prosecuting this Motion. The Court will also require Respondent to reimburse Debtor for the filing fee for the action filed in Superior Court, but does

17

not award any amount for Debtor's time as there was no evidence that Debtor lost time at work or otherwise was damaged by the time spent in seeking to remove the dispossessory from his credit report.

Debtor seeks additional damages based on the difference in his current rent and the cost of subsidized housing and for the emotional distress caused by the presence of the dispossessory proceeding on his credit report. However, Debtor did not provide any documentation from the Housing Authority for the reason he was denied subsidized housing. Debtor testified that he was told that the denial was due to the dispossessory, but there is no evidence that it was the sole reason for the denial, and damages are not warranted.

Debtor's emotional distress was likewise related to his failure to obtain subsidized housing. Additionally, Debtor testified that he began taking anxiety medicine and seeing a counselor in June 2021, which coincides with the time period that this Court took up his Motion. On June 2, 2021, the Court entered an order directing him to amend the Motion, and on July 1, 2021, the Court set the Motion for a preliminary hearing. [Docs. 37, 45]. The order requiring expungement of the dispossessory proceeding by credit reporting agencies was entered on August 18, 2021. [Doc. 52]. Because Debtor did not begin seeing the counselor or taking the additional medication until months after discovering the dispossessory action the Court cannot conclude that the dispossessory proceeding was the cause of Debtor's emotional distress and such damages also are not warranted. For the reasons stated herein, it is

ORDERED that the Motion is GRANTED; it is further

ORDERED that Respondent shall pay Debtor's attorney fees for filing and prosecuting this Motion. Debtor's counsel shall file an affidavit setting forth her fees within 14 days after entry of this Order. It is further

ORDERED that Respondent shall pay $214 to Debtor as reimbursement of the fee he incurred to file an action in the Superior Court. Such payment shall be governed by further order in conjunction with an order on attorney fees.

**END OF ORDER**

## **Distribution List**

Shelba Dawn Sellers
Sellers & Mitchell, P.C.
106 Euclid Drive
Thomasville, GA 31792

Marvin Gaye Gordon
Apt 1222
8700 N 50th St
Tampa, FL 33617

R. David Ware
Hall Booth Smith, P.C.
Suite 2900
191 Peachtree Street NE
Atlanta, GA 30303-1775